**FILED**

NOV - 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Harry Pollinger,                          )
*P O B 6577*                              )    Case No.
*DESTIN, FL. 32550* Plaintiff,            )
                                          )
         vs.                              )
                                          )
UNITED STATES *aka*, UNITED STATES        )    **VERIFIED COMPLAINT**
OF AMERICA, a Federal Corporation,        )
GREGORY COLLIER, C. SHERWOOD, and         )    CASE NUMBER  1:06CV01885
R. A. MITCHELL,                           )
                                          )    JUDGE: Colleen Kollar-Kotelly
              Defendants.                  )
                                          )    DECK TYPE: Pro se General Civil
_____ )    DATE STAMP: 11/2/2006

*JURY ACTION*

COMES NOW Harry Pollinger, Plaintiff, proceeding on his own behalf and with the

assistance of Law, bringing this action alleging violations of federal Rights due State Citizens

(sentient beings) by federal officer(s) acting under color of federal law. Defendants deprived

Plaintiff of Rights, privileges and immunities secured under the Constitution for the United

States: Amendments One, Four, Five, Six, Fourteen and Sixteenth thereof. The following issues

give rise to the Plaintiff's complaint as proper before this Court in seeking such relief as

commanded upon the exhaustion of the administrative remedies, and are not extraordinary.

Plaintiff is seeking actual and compensatory damages for the injuries to person and property

caused by the Defendants for their reckless and willful acts.

Harry Pollinger, is unschooled in law and; therefore, is waived from being held to the standards of a bar attorney as stated in *Haines*: "*however inartfully plead, [pro se] must be held to a less stringent standard than formal pleadings drafted by bar-admitted attorneys and can only be dismissed for failure to state a claim if it appears beyond a doubt that the pro se litigants can prove no set of facts in support of [his] claims which would entitle them to relief.*" *Haines v. Kerner,* 404 U.S. 519-521. Plaintiff requests this Court to take judicial notice of *Haines*, as such doctrines are applicable in this instant case. Plaintiff further indulges this Court to exercise impartiality at all stages of these proceedings, applying sound legal principles and conditions precedent.

## I.
## Jurisdiction And Venue

This action is cognizable pursuant to violations stemming from 26 U.S.C. § 7214, *et. seq.*, giving rise to an action cognizable under 26 U.S.C. §§ 7433, 7432, 7429, 2409, 2410 Title 28 U.S.C. § 1331 – Federal Question; 28 U.S.C. § 1340 – Internal Revenue; 28 U.S.C. § 1346 – United States Defendants; 28 U.S.C. § 1367 – Supplemental Jurisdiction; 28 U.S.C. § 3002(15)(A) – United States Federal Corporation; Title 5 U.S.C. § 702; All Writs Act at 28 U.S.C. §§ 1651 and 1658; Federal Rules of Civil Procedure §§ 57 and 65; and the broad equitable powers of this Court.

Plaintiff's action and petition for relief is based upon declaring his constitutionally-guaranteed Rights in light of conduct of officers and/or employees of the United States, acting under color of Federal law; therefore, Plaintiff respectfully requests this Court – a creature of statute – to sit as an Article III Court pursuant to the United States Constitution to hear these issues. Other jurisdictional claims arise under the United States Constitution at Article I § 7,

Amendments I, V, VI, IX, XIV, and XVI of the laws of the United States and presents federal questions within this Court's jurisdiction under Article III of the United States Constitution.

Venue is proper in the District of Columbia, the Seat of Government pursuant to 4 U.S.C. §§ 71, 72 and 73; the United States is a Federal corporation pursuant to 28 U.S.C § 3002(15)(A) and a citizen as defined at 28 U.S.C § 1332(c)(1) and (d) maintaining its corporate offices located in the district. A duly authorized officer of the United States will answer on behalf of the acts committed by its' officials, officers, agents and employees from said district. *"The United States government is a foreign corporation with respect to a state."* <u>*In the Matter of Merriam*</u>, 36 N.E. 505, 141 N.Y. 479, affirmed 16 S.Ct. 1073, 163 U.S. 625, 41 L.Ed 28720 CJS, Section 1785; also see <u>*Penhallow v. Doane's Administrator's*</u>; <u>*Clearfield Trust Company v. United States*</u>, 318 U.S. 363-371, 1942. Said corporation employees are prohibited from certain acts and limited to certain enumerated powers by said contract (the Constitution for the United States), which is alleged herein.

## II.
## Joinder of Parties

The Defendants, the UNITED STATES aka, UNITED STATES OF AMERICA, GREGORY COLLIER, C. SHERWOOD, and R. A. MITCHELL having individually and collectively participated in causing damage and harm to Plaintiff Harry Pollinger's person and property hereby enjoins all Defendants, pursuant to Fed.R.Civ.P. – Rule 18, *in pari materia* with 28 U.S.C. § 1367 – engaging this Court's supplemental jurisdiction.

> *". . . if the joined claims do arise from the same case or controversy, the court may exercise supplemental jurisdiction over the claims." <u>See Leham v. Revolution Portfolio LLC</u>, 166 F.3d 389, 394, (1st Cir. 1999). ". . . Rule 18 permits joinder of any and all claims subject only to objections to jurisdiction and venue . . ." <u>Sinclair v. Soniform</u>, Inc., 935 F.2d 599 (3d Cir. 1991))*

Therefore, in the interest of justice and under the due process clause of the Fifth Amendment and the equal protection of the law under the Fourteenth Amendment to the Constitution for the United States of America, Plaintiff effectively moves to enjoin all parties named herein as proper before the Court.

### III.
### Plaintiff's Capacity And The Invocation Of
### Jurisdiction Pursuant To The Common Law

Plaintiff, Harry Pollinger is presently domiciled at Destin, Florida [32550] located in these 50 United States of (North) America. Plaintiff is at all times mentioned herein, proceeding in the capacity and standing as a Living, Breathing, Conscious, Thinking, Flesh and Blood Sentient Human Being – Not appearing as a subclass statutory person, citizen, collective entity or otherwise; but, of a superior class and authority not enjoyed by the United States, a corporation void of conscience – given life and existence by its corporate officials, officers, agents and employees (*see Brasswell v. United States*, 487, U.S. 99 (1988) quoting *United States v. White*, 322 U.S. 694 (1944).

The Fifth, Sixth, Seventh and Fourteenth Amendments to the Constitution secure due process to the American people in the course of the common law, which necessarily includes the **right to trial by jury**. *See Wayman v. Southard*, 23 U.S. 1; 6 L.Ed. 253; 10 Wheat 1 (1825). The United States Supreme Court established: *"The Constitution is to be interpreted according to the Common Law Rules."* *Schick v. United States*, 195 U.S. 65; 24 S.Ct. 826; 49 L.Ed. 99. The Supreme Court stated further: *"It [U.S. Constitution] must be interpreted in the light of Common Law, the principles and history of which are familiarity known to the framers of the Constitution. The language of the Constitution could not be understood without reference to the Common Law."* *United States v. Wong Kim Ark*, 169 US 649; 18 S.Ct. 456. Therefore, this

Court is hereby provided notice that, as a precaution, Plaintiff is invoking the **saving to suitors clause** at 28 U.S.C. § 1333(1), in order to secure and proceed in the course of the common law in the event that there is controversy within special maritime and territorial jurisdiction of the United States.

Under rules of common-law procedure, acquiescence to stipulations of fact and law set forth in attending facts, claim and/or complaint affidavits, along with conclusions of law included or incorporated by reference in conditional acceptance, protest and/or rebuttal – documents will have the effect of a common law Retraxit and Stipulation by Tacit Procuration – whether for purposes of administrative or judicial due process remedies.

### IV.
### Defendants

(a) At all times relevant hereto, the corporate citizen Defendants UNITED STATES aka, UNITED STATED OF AMERICA, maintains an office within the the judisdiction of the Court.

(b) Defendant GREGORY COLLIER's main office is located at 500 N. Capitol St. NW, Washington, DC 2022 and his pilot office is located at Internal Revenue Service, Area 5, SB/SE Lien Unit, 125 W Romana St, Suite Pensacola FL 32502;

(c) Defendant C. SHERWOOD's main office is located at 500 N. Capitol St. NW, Washington, DC 20221 and her pilot office is located at Internal Revenue Service, 5000 Ellin Road, New Carrollton, MD 20706;

(d) Defendant R.A. MITCHELL's main office is located at 500 N. Capitol St, NW, Washington, D.C. 20221 and her/his pilot office is located in Cincinnati, OH 45250-5585.

### V.
### Conditions Precedent Establishes The Defendants
### Effectively Waived Immunity By Their Reckless Acts

1. Plaintiff realleges all allegations stated above, and further alleges:

2. Prior to filing this action, the Plaintiff filed numerous administrative claims (incorporated by reference) by writing and serving notice on the Area Director and the

Compliance Technical Support Manager for the IRS district of Massachusetts as required by 26 C.F.R. § 301.7433-1(e)(1). In these written administrative claims, the Plaintiff informed the Area Director and the Compliance Technical Support Manager in detail of the grounds for said claims; the attached exhibits included herein in support.

3. The Plaintiff further informed the Area Director and the Compliance Technical Support Manager in writing and described the injuries incurred as a result of the violations of law and violations of administrative regulations by IRS personnel attached to the exhibits in support.

4. The Plaintiff further informed the Area Director and the Compliance Technical Support Manager in writing of the specific dollar amount of the claims and damages, incurred, not yet incurred and reasonably foreseeable for which all of the claims were made in writing and the IRS has ruled upon the administrative claims, denying each, every and all, or in the alternative, a period of six months has passed and the Area Director and the Compliance Technical Support Manager have not answered.

5. The Plaintiff having effectively exhausted his administrative remedy in several sections of Title 26 of the United States Code, including but not limited to: 26 U.S.C. § 7433 – Unauthorized Collection Action, 26 U.S.C. § 6401 Abatements, 26 U.S.C. § 6326 – Appeal of Administrative Liens and employees of the United States Federal corporation having documented a plethora of substantive and procedural due process violations as verified in this complaint have effectively waived immunity.

6. The UNITED STATES Defendants have further waived immunity under the Anti-Injunction Act codified at 26 U.S.C. § 7421. The Anti-Injunction Act precludes this Court from exercising jurisdiction over actions that seek to enjoin the assessment and collection of federal income taxes: **which is <u>not</u> the intent or subject matter of this** suit. According to

_Hoillingshead v United States_, 85-2 USTC 9772 (5th Cir 1985) 26 U.S.C. § 7421 is a waiver of immunity by the Government for a Citizen who claims that his or her property has been subject to wrongful Levy.  **"*The government consents to be sued when the IRS violates a congressionally mandated procedure during the administrative assessment and collection process.*"**

Section 7421 of the Internal Revenue Code provides, in relevant part as follows:

(a)    Tax – Except as provided in sections 6015 (e), 6212 (a) and (c), 6213 (a), 6225 (b), 6246 (b), 6330 (e)(1), 6331 (i), 6672 (c), 6694 (c), and 7426 (a) and (b)(1), 7429 (b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

7. Plaintiff is <u>not</u> seeking to restrain the lawful assessment or collection of any internal revenue tax, but dispute the unlawful seizure of personal property as a result of the intentional violations of procedural and substantive due process and the documented reckless and willful disregard for the internal revenue laws while presumed to be acting on behalf of the UNITED STATES Defendants.

8. Verified evidence of the records provides that employees of the UNITED STATES Defendants have failed to comply with the administrative prerequisites that would grant relief under the Anti-Injunction Act. Immunity under the Anti-Injunction Act exists when employees of the UNITED STATES Defendants are in compliance with the statutes as set forth by Congress and applicable Treasury Regulations.

9. Evidence provides that employees of the UNITED STATES Defendants have illegally seized Plaintiff's personal property without establishing liability, without imposing a tax,

without a determination, without a deficiency, without an assessment, and without a warrant in violation of multiple provisions of the Federal Constitutional and substantive due process.

10. Further, the UNITED STATES Defendant consents to being sued when any one of its officials, officers, agents or employees proceed in violation congressionally mandated, statutory procedures during an administrative, civil or criminal judicial proceeding as in this case.

## VI.
## Facts And Summary Of Events

11. Plaintiff realleges all allegations stated above, and further alleges:

12. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL SHERWOOD issued a "**Notice of Federal Tax Lien**" in the amount of $14,125.65 for tax years 2000 and 2001 effectively slandering title to the name and real property rights of Plaintiff Harry Pollinger.

13. On or about May 10, 2005, alleged Revenue Officer GREGORY COLLIER issued a Summons to Plaintiff Harry Pollinger seeking to obtain books, records and other confidential financial information for the years 1999 and 2003.

14. On or about May 11, 2005, FAIRFIELD RESORTS, INC. was served a third-party "Notice of Levy on Wages, Salary, and other Income"" by alleged Revenue Officer GREGORY COLLIER in the amount of $15,787; attempting an administrative seizure of Plaintiff Harry Pollinger's personal property in their possession

15. The Notices of Levy and Notice of Federal Tax Lien all purport the underlying tax liability cited – on the instruments as the "Kind of Tax" in column (a) – <u>as 1040</u>.

16. On or about September 28, 2005 or soon thereafter, Plaintiff served Defendant GREGORY COLLIER, C. SHERWOOD and numerous pertinent departments of the Internal Revenue Service, plus Senators BILL NELSON and MEL MARTINEZ a recorded "**Notice and**

**Demand to Issue Certificate of Release for Notice of Federal Tax Lien**" with an affidavit and exhibits attached demanding the release of the Notices of Federal Tax Liens filed for tax years 2000 and 2001; including Form 12661 – **Disputed Issue Verification,** Form 843 – **Claim for Abatement of Penalties,** Form 12277 – **Application for Withdrawal of Filed Notice of Federal Tax Lien,** and a Form 9423 – **Collection Appeals Request**   IRS Form 843 – **Claim for Abatement of Penalties,** which resulted in <u>no response</u> from the Area Director or any other IRS fiduciaries petitioned for such release, with the exception of GREGORY COLLIER and DENNIS L. PARIZEK.

17. On or about October 3, 2005 or soon thereafter, Plaintiff served THOMAS M. OWENS, Appeals Settlement Officer a recorded **Notice and Affidavit of Facts and Correspondence to Collection Due Process** stating Plaintiff's legal position pursuant to federal statutes, case law, and the Internal Revenue Code.

18. On or about October 21, 2005 or soon thereafter, Plaintiff served Defendant a "**Notice and Demand for Abatement of Alleged Federal Income Tax Liability**" responding the Defendant's Notice CP 504, which included a Form 843 – **Claim for Abatement of Penalties** and Form 12661 – **Disputed Issue Verification.**

19. On or about November 7, 2005 or soon thereafter, Plaintiff served EDD EASTERLING, Appeals Team Manager a **Notice of Protest and Demand for Determination** findings in the Notice of Determination and Decision Letter of Appeals Manager EDD ESTERLINGS; because Defendant did not address any of the issues Plaintiff raised.

20. Plaintiff petitioned the United States Congress for assistance and received responses from **U.S. Senator BILL NELSON,** dated November 11, 2005 and January 10, 2005 resulting in the Taxpayer Advocate Nadya Farah (signing for Belinda A. Revel-Addis), – practicing law

without a license – responding to issues <u>unrelated</u> to concerns of the Plaintiff in this instant case.

21. On or about November 14, 2005 or soon thereafter, Plaintiff served Defendants GREGORY COLLIER, C. SHERWOOD, Area 5 Director, and Automated Collection Systems two (2) "Notice of Federal Tax Lien Dispute letters" with recorded Notices of Inchoate Federal Tax Lien Disputes.

22. On or about December 14,2005 or soon thereafter, Plaintiff received from the IRS Manager, Maxine A. Lindsay, a Denial Response to Plaintiff's above Request for Withdrawal of Notice of Federal Tax Lien.

23. On or about December 19, 2005 or soon thereafter, Plaintiff received a boilerplate **Letter 3176C** regarding the "Forms 843 – Claim for Refund and Abatement" for the year 2002 from DENNIS L. PARIZEK stating Plaintiff's information sent was frivolous and gave him 30 days to correct his position.

24. On or about January 10, 2006 or soon thereafter, Plaintiff served DENNIS L. PARIZEK a Verified Affidavit of Intent – Demand for Proof of Claim and Notice of Disputed Claim of Frivolous Filing (which included two (2) a Forms 843 – Claim for Abatement of Penalties and Form 12661 – Disputed Issue Verification two (2) a Forms 843 – Claim for Abatement of Penalties and Form 12661 – Disputed Issue Verification) in Response to IRS Boilerplate Letter 3176C with copies to the President George Bush, U.S. Attorney General, Area 5 Director, Chief of Regulations and procedures.

25. On or about February 16, 2006 or soon thereafter, Plaintiff received a letter of **Denial of** Plaintiff's **"Claim for Abatement Penalties"** from SUSANNE BATES, Manager, for tax period 2000 and 2001.

26. On or about March 18, 2006, or soon there after, Plaintiff served SUSANNE BATES a "**Verified Affidavit of Protest to Contest Notice Disallowing Claim for Abatement and Request for Appeal of Decision**" and copies to other pertinent departments of the IRS.

27. On or about April 26, 2006 or soon thereafter, Plaintiff received three (3) "Notice of Levy" issued by GREGORY COLLIER to GEORGIA COMMERCIAL INVESTORS INC., DESTIN BANK (now know as WHITNEY NATIONAL BANK) and CEDENT PAYROLL DEPARTMENT; one (1) "Notice of Levy on Wages, Salary and Other Income" issued to FAIRFIELD RESORTS INC. in the amount of $15,084.67; attempting an administrative seizure of Plaintiff's personal property in their possession.

28. On or about May 1, 2006 or soon thereafter, Plaintiff received a letter from WHITNEY NATIONAL BANK, explaining that Defendant GREGORY COLLIER caused $6,614.40 of Plaintiff's Compensation for Labor Property to be seized via the alleged "Notice of Levy" – causing economic hardship and devastation to Plaintiff's ability to provide the necessities of life for his family.

29. On or about May 31, 2006, or soon there after, Plaintiff served R. A. MITCHELL a "**Constructive Notice and Demand to Cease and Desist Withholding of Federal Income Tax – Evidence of No Liability**" and copies to other pertinent departments of the IRS.

30. On or about June 2, 2006 or soon thereafter, Plaintiff received a letter from CENDANT PAYROLL DEPARTMENT explaining that Defendant GREGORY COLLIER caused Plaintiff's Compensation for Labor Property to be seized via the alleged "Notice of Levy on Wages, Salary and Other Income," by CENDANT/FAIRFILED RESORTS INC. seizing $5,578.69. The year-to-date amount seized is $9,528.06 since 6/2/06 from the IRS Levy and

for Federal Income Tax is $2,359.09 totaling $11,887.78 – causing economic hardship and devastation to Plaintiff's ability to provide the necessities of life for his family.

31. On or about June 6, 2006 or soon thereafter, Plaintiff received a boilerplate Letter 3176C regarding the "Forms 843 – Claim for Refund and Abatement" for the year 2002 from DENNIS L. PARIZEK stating Plaintiff's information sent was frivolous and gave him 30 days to correct his position.

32. On or about June 16, 2006 or soon thereafter, Plaintiff received a letter from United States Senator MEL MARTINEZ stating he has contacted the appropriate officials on your behalf in hopes of obtaining a resolution.

33. On or about August 10, 2006 or soon thereafter, Plaintiff served Defendant a "Notice and Demand for Abatement of Interest and Penalties in response to Appeals Officer BETTY LANDAU, letter dated July 28, 2006.

34. On or about August 15, 2006 or soon thereafter, Plaintiff received Letter 3172, with a "Notice of Federal Tax Lien" issued by GREGORY COLLIER & R. A. MITCHELL dated 8/3/06 for 2000, 2001 and 2002 in the amount of $35,857.07.

35. On or about September 11, 2006 or soon thereafter, Plaintiff served Defendant a "Notice and Demand to Release or Withdraw Notice of Federal Tax Lien, including two (2) Forms 12261 – Disputed Issue Verification, a Form 12277 – Application for Withdrawal of Filed From 668(Y), Notice of Federal Tax Lien and a Request for a Collection Due Process Hearing in response to Revenue Officer GREGORY COLLIER Letter 3172.

36. On or about September 21, 2006 or soon thereafter, Plaintiff received a letter from Appeals Officer, BETTY LANDAU, Denying Request for Abatement of Interest and Penalties for 2000 and 2001.

37. On or about September 26, 2006 or soon thereafter, Plaintiff served Defendant GREGORY COLLIER a "Verified Notice of Harassment and Pending Litigation" in response to Revenue Officer GREGORY COLLIER visiting his workplace after he was served a notice to cease and desist contacting his employer and coming to Plaintiff's workplace.

38. On or about September 29, 2006 or soon thereafter, Plaintiff served Defendant a Verified **Notice of Absolute Default and Notice to Contest and Abate Frivolous Filing Penalty"** in response to Notice Number CP15, dated September 11, 2006.

39. The IRS Seizure fro June 2, 2006 to October 10, 2006 pay period by CENDENT/FAIRFIELD RESORTS INC consists of $9,528.06 from the IRS Levy and in FIT of $2,359.09 totaling $11,887.78 – causing economic hardship and devastation to Plaintiff's ability to provide the necessities of life for his family.

40. Defendant's employee GREGORY COLLIER, C. SHERWOOD and R.A. MITCHELL proceeded in violation of <u>26 U.S.C. § 6103. Confidentiality and disclosure of returns and return information</u>. which states in pertinent part: "(a) General rule. Returns and return information shall be confidential, and except as authorized by this title— (1) no officer or employee of the United States, and (3) no other person . . . shall disclose any return or return information obtained *by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.*"

41. The Defendants have acted with complete defiance of the law, abused their presumed authority and caused violations of federal law to precipitate, which is the direct and proximate cause of the damages suffered by the Plaintiff.

/ / /

/ / /

## VII.
## COUNT I.
### Defendants Failed To Comply With 26 U.S.C § 6001

42. Plaintiff realleges all allegations stated above, and further alleges:

43. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002,

44. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally deficient "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, ($6,614.40 by WHITNEY NATIONAL BANK and $9,528.06 to be seized by CEDENT PAYROLL DEPARTMENT) causing an amount of a $16,142.46 to be seized; with willful disregard for the internal revenue laws *failing to serve notice* upon the Plaintiff pursuant to 26 U.S.C. § 6001 and Treasury Regulations at 26 CFR § 1.6001-1 and 301.6001-1, informing the Plaintiff to make returns to show whether or not Plaintiff has been made liable for a tax imposed by the internal revenue laws giving rise to violations cognizable at 26 U.S.C. § 7433(a).

45. Employees of the Defendants failed to serve notice Letter 978 or 979 and Plaintiff has never received notice from the Secretary, district director or area director to make any return – as no tax has ever been imposed upon Plaintiff by Title 26 requiring Plaintiff to file a return.

46. The Defendants' employees have arbitrarily damaged the real property rights of Plaintiff with the filing of a procedurally invalid Notice of Federal Tax Lien without due process of law by failing to meet these requisite requirements. As the Secretary *may* require any person and not finding it necessary to: (1) make Plaintiff liable, (2) impose a statutory tax under the internal revenue laws, (3) inform the Plaintiff to keep books and records, and (4) serve notice that Plaintiff may be made liable by some tax imposed is an indication that the Secretary did not intent to impose any tax, nor is it the duty of the Plaintiff to determine what tax the Secretary may impose. In other words, if the Secretary used his discretion and decided not to serve notice upon Plaintiff then it must be presumed that Plaintiff had no obligation to act.

47. The Defendants have failed to comply with the Secretary's notice requirement causing actual, direct economic damages sustained by the Plaintiff as the proximate result of his reckless, intentional and willful actions.

### VIII.
### COUNT II.
### Notice Of Levy Issued In Violation Of 26 U.S.C §§ 6331(a) and 6303

48. Plaintiff realleges all allegations stated above, and further alleges:

49. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY

COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

50. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally deficient "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of $16,142.46 to be seized; with willful disregard for the internal revenue laws *failed to issue a Notice and Demand for tax* prior to the taking of such property, denying Plaintiff a notice and opportunity to be heard in order to defend against Defendants' acts.

51. The Defendants knew that prior to causing the Notices of Federal Tax Liens and Notices of Levy to issue, they were required to issue a statutory notice and demand of tax, as commanded by an Act of Congress codified at 26 U.S.C. 6303, and acting under color of law failed to comply with the Act.

52. Defendant's employee GREGORY COLLIER, collectively and individually, did know or should have known that prior to seizure of any property, a notice and demand for tax after assessment must be made, and the Defendants have willfully failed to comply with this Act of Congress.

53. Plaintiff has been and continues to be severely injured by the collusive acts of all Defendants causing irreparable harm and injury to Plaintiff's personal property and resulting in

actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of Defendants' reckless, intentional and willful actions.

### IX.
### COUNT III.
### Defendants Failed To Comply With 26 U.S.C. § 6331(j)(2)(A)

54. Plaintiff realleges all allegations stated above, and further alleges:

55. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002

56. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally deficient "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of $16,142.46 to be seized; with willful disregard for the internal revenue laws *failed to verify, establish or identify the statutory tax liability imposed* against the property rights of Plaintiff by Title 26 of the United States Code.

57. Defendants GREGORY COLLIER, C. SHERWOOD, and R.A. MITCHELL issued "Forms 668(Y)(c) _ Notice of Federal Tax Lien" and "Forms 668-A (ICS) Notice of Levy"

intentionally mischaracterizing the alleged "Kind of Tax" liability as 1040, deceitfully misleading other incompetent parties with the presumption that Congress enacted "Form 1040" as the type of tax liability imposed – when "Form 1040" is not a kind of tax but merely a self-assessing information return or confession Form.

58. Pursuant to an Act of Congress codified at 26 U.S.C. § 6301- Collection authority. clearly states: "*The Secretary shall collect the taxes imposed by the internal revenue laws*," and the Secretary failed to *impose* a tax liability against the Plaintiff that is cognizable under the internal revenue laws or the Internal Revenue Code.

59. Defendants well knew that a "Liability" is the basis and prerequisite which gives rise to an assessment after demand pursuant to 26 U.S.C. § 6321, as defined in Treasury Regulations at 26 CFR § 301.7602-2(c)((3)(C) Tax Liability. "*A Tax Liability means the liability for any tax imposed by Title 26 of the United States Code . . .*" and Defendant's employee EDWARD L. REESE and all other Service employees failed to *impose* or make Plaintiff *liable for any tax imposed* by Title 26 of the United States Code, as such employees have never disclosed the "*tax imposed*" against Plaintiff.

60. Plaintiff has been and continues to be severely injured by the collusive acts of all Defendants causing irreparable harm and injury to Plaintiff's personal property and resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of Defendants' reckless, intentional and willful actions.

## X.
## COUNT IV.
### Defendants Failed To Comply With 26 U.S.C. § 6404(a)

61. Plaintiff realleges all allegations stated above, and further alleges:

62. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002

63. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally deficient "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of $16,142.46 to be seized; with willful disregard for the internal revenue laws *failing to suspend the interest and penalties for an amount not specifically stated - establishing no statutory basis of liability for any tax imposed* against the property rights of Plaintiff under Title 26 of the United States Code.

64. Defendants effectively identifies the alleged statutory tax penalties at 26 U.S.C. §§ 6601 – **Interest on underpayment**, Section 6651 - **Failure to file tax return** and 6654 – **Failure to pay estimated income tax**, but <u>failed</u> to establish the statutory basis of liability for any tax imposed in violation of 26 U.S.C. § 6301- clearly states: "***The Secretary shall collect the taxes imposed by the internal revenue laws***," and the Secretary has <u>never</u> *imposed* a tax liability against the Plaintiff cognizable under the internal revenue laws.

65. Plaintiff has been and continues to be severely injured by the collusive actions of all Defendant's employees acting as financial terrorists and causing irreparable harm and injury to Plaintiff's personal property resulting in actual, direct economic damages sustained by the Plaintiff, which is the proximate cause and result of Defendants' reckless, intentional and willful actions.

## XI.
## COUNT V.
## Defendants Failed To Comply With 26 U.S.C. § 6201(a) and 6202

66. Plaintiff realleges all allegations stated above, and further alleges:

67. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

68. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally deficient "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of $16,142.46 to be seized; with willful disregard for the

internal revenue laws *failed to make an assessment* in the time and mode prescribed by the Secretary prior to the issuance of Notice of Federal Tax Lien or the Notice of Levy.

69. The Defendants although required to make an assessment of a tax liability prior to causing the Notice of Federal Tax Lien to issue, failed to comply with and adhere to the procedural requirements of 26 U.S.C. § 6203, proceeding in bad faith and under color of law issuing the statutory Notice.

70. Defendant's employees' failure to comply with 26 U.S.C. § 6203 has resulted in a slander of title, causing great economic injury to Plaintiff's credit rating and borrowing power, and effectively prohibiting Plaintiff's ability to proceed in commerce with said encumbrance.

71. Plaintiff has been and continues to be severely injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property and resulting in actual, direct economic damages sustained by the Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

## XII.
## COUNT VI.
### Defendants Failed To Comply With 26 U.S.C. § 6203

72. Plaintiff realleges all allegations stated above, and further alleges:

73. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his

Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

74. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally deficient "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of $16,142.46 to be seized; with willful disregard for the internal revenue laws *failing to establish and record the alleged liability* required by 26 U.S.C. § 6203 and implementing regulations, prior to such issuance of the Notice of Federal Tax Lien or the Notice of Levy.

75. Defendant's employee did know or should have known that "Liability" is the <u>basis</u> and <u>prerequisite</u> for which an assessment is determined as defined in Treasury Regulations at 26 CFR § 301.7602-2(c)((3)(C) Tax Liability. "*A Tax Liability means the liability for any tax imposed by Title 26 of the United States Code . . .*" and Defendant's employee failed to *impose* or make Plaintiff liable for any tax imposed by Title 26 of the United States Code.

76. Plaintiff has been and continues to be severely injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property resulting in actual, direct economic damages sustained by Plaintiff which is the proximate cause and result of the reckless, intentional and willful actions.

### XIII.
### COUNT VII.
### <u>Defendants Failed To Comply With 26 U.S.C. § 6212(a)</u>

77. Plaintiff realleges all allegations stated above, and further alleges:

78. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

79. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of $16,142.46 to be seized; with willful disregard for the internal revenue laws *failed to issue a Notice of Deficiency* (**90-day letter**) <u>required</u> by 26 U.S.C. § 6212(a) and implementing regulations.

80. Defendant's employees have effectively usurped this Act of Congress and intentionally blocked Plaintiff's constitutionally-protected access to due process and equal protection of the law wherein they failed to allow Plaintiff ninety (90) days to petition the tax court and effectively dispute their outrageous, fictitious and unverifiable claim - void of establishing a basis of liability.

> This deprivation of the opportunity to litigate a tax liability before paying the tax can cause substantial hardship to a taxpayer. *Granquist v. Hackleman*, 264 F.2d 9, 14 (9th Cir. 1959). Such a deprivation is also "out of keeping with the thrust of the Code." *Laing*, 423 U.S. at 176, 96 S.Ct. at 482.

81. Because of Defendant's employees collective failure to comply with 26 U.S.C. § 6212(a), Plaintiff has been and continues to be severely damaged and injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property resulting in actual, direct economic damages sustained by Plaintiff which is the proximate cause and result of their reckless, intentional and willful actions.

### XIV.
### COUNT VIII.
### Defendant's employee Failed To Comply With 26 U.S.C. § 7432

82. Plaintiff realleges all allegations stated above, and further alleges:

83. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

84. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized; with willful disregard for the internal

revenue laws knowingly *refused to release the notice of lien* as required by 26 U.S.C. § 6325 *et. seq.*

85. That on or about September 28, 2005 and, January 10, 2006 and September 11, 2006 the Plaintiff filed Forms 12277 – Application for Withdrawal of Filed Notice of Federal Tax Lien with an affidavit and supporting exhibits fully disputing the Notice of Federal Tax Liens, which resulted in a non-response from the Defendants.

86. Defendant's employees GREGORY COLLIER, C. SHERWOOD, R. A. MITCHELL and the Area Director did collectively and individually know or should have known that pursuant to 26 U.S.C. § 6325(a), after notice is received of such violations, the law commands that the Notice of Federal Tax Lien be released with the issuance of a Certificate of Release; and Defendants did fail to issue said release, continuing the economic damage to Plaintiff's property and name.

87. Plaintiff has been and continues to be severely injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property and resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

## XV.
## COUNT IX.
## Defendants Simulated Judicial Process In Violation of 18 U.S.C. § 2311

88. Plaintiff realleges all allegations stated above, and further alleges:

89. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a

procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002, and with willful disregard for the internal revenue laws *illegally simulated judicial process* by causing *to be made and signed fraudulent entries in books, certificates, returns, and statements* titled "Notice of Federal Tax Lien" against Plaintiff's personal-property Rights in the amount of $35,857.07 for tax years 2000, 2001 and 2002

90. By way of fraudulent inducement Defendants GREGORY COLLIER, C. SHERWOOD, and R. A. MITCHELL caused a counterfeit securities instrument titled "Notice of Federal Tax Lien" to be issued and recorded on the County seat in a "Lien Index" in violation of 18 U.S.C. § 2311, with first hand knowledge that no valid judicial "Lien" has ever issued pursuant to 26 U.S.C. §§ 7401 and 7403 or 28 U.S.C. §§ 3201 and 1962.

91. The Defendants caused the Notice of Federal Tax Lien instrument to be recorded in the "Lien Index" to encumber and seize equitable interest in real property associated therewith – in an extortionate transaction that resulted in effectively slandering Plaintiff's name and livelihood, and violating State law, which governs the disposition of all real property controlled or owned by Plaintiff.

92. Plaintiff has been and continues to be severely injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property and resulting in actual, direct economic damages sustained by

Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

## XVI.
## COUNT X.
## Defendants Issued A Bill Of Attainder In Violation Of The Constitution

93. Plaintiff realleges all allegations stated above, and further alleges:

94. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

95. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized; with willful disregard for Article I, Section 9 Cl. 3 and Article I, Section 10 Clause 1 *knowingly caused a Bill of Attainder to issue,* labeling Plaintiff as a "Illegal Tax Protester" and punishing Plaintiff by taking Plaintiff's property without a judicial trial – elements of a Bill of Attainder.

96. The Plaintiff has petitioned employees of the Defendant regarding the income tax laws as relevant to his presumed liability, and has been labeled as one forwarding "Frivolous" arguments; wherein the Defendants have never revealed the nature of frivolity applicable to the Plaintiff's principled issues and concerns - resulting in punishing the Plaintiff by encumbering Plaintiff's property without a judicial trial – elements of a Bill of Attainder.

97. Defendant's employees GREGORY COLLIER, C. SHERWOOD, R. A. MITCHELL and the Area Director collectively and individually, did know or should have known that that the procedurally invalid issuance of the Notice of Federal Tax Lien is an instrument sufficient to encumber the equitable interest in real property and result in the taking of that property without the benefit of a judicial trial – and any Act of Congress purporting to abrogate this constitutional requirement is *void ab initio*.

98. Plaintiff has been and continues to be severely injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property and resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

## XVII.
## COUNT XI.
### Defendants Failed To Comply With 26 U.S.C. § 6751(b)

99. Plaintiff realleges all allegations stated above, and further alleges:

100. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of

$14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

101. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized; with willful disregard for the internal revenue laws *failing to obtain approval from the Secretary in writing* pursuant to 26 U.S.C. § 6751(b), prior to or after issuing the jeopardy assessment of an unknown liability.

102. The Defendants proceeded in bad faith, and under color of law caused statutory penalties to be assessed for tax year 2001 as indicated on Notice CP 504 in the amount of $2,374.19 without obtaining approval from the Secretary – making their acts a nullity.

103. Plaintiff has been and continues to be severely damaged and injured by the individual and collective failure of Defendant's employees to comply with 26 U.S.C. § 6751(b), and the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of the reckless, intentional and willful actions.

/ / /

/ / /

## XVIII.
## COUNT XII.
### Defendants Failed To Comply With 26 U.S.C. § 7429(a)(1)

104. Plaintiff realleges all allegations stated above, and further alleges:

105. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002, causing an amount of $16,142.46 to be seized; with willful disregard for the internal revenue laws *failing to obtain prior approval from the Chief Counsel of the Internal Revenue Service in writing* as required in this title.

106. The Defendants well knew they were not authorized to issue the jeopardy assessment prior to written approval from the Chief Counsel, and any violation of this act voids their actions.

107. Due to the individual and collective failure of Defendant's employees to comply with the provisions of 26 U.S.C. § 7429 prior to the alleged assessment, Plaintiff has been and continues to be severely damaged and injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property and resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

# XIX.
## COUNT XIII.
### Defendants Failed To Comply With 26 U.S.C. § 7429(a)(1)

108. Plaintiff realleges all allegations stated above, and further alleges:

109. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

110. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized; with willful disregard for the internal revenue laws *failing to issue a written statement no later than five days after the alleged jeopardy assessment and levy, setting forth information relied upon authorizing the action.*

111. The Defendants did know or should have known that they were required by Treasury Regulations to issue a written statement to Chief Counsel no later than five days after a jeopardy assessment disclosing the reasons for their actions.

112. Plaintiff has been and continues to be severely damaged and injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property and resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

**XX.**
**COUNT XIV.**
**Defendants Failed To Comply With 26 U.S.C. § 6020(b)**

113. Plaintiff realleges all allegations stated above, and further alleges:

114. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

115. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized; and with willful disregard for the internal revenue laws *failed to obtain approval from the Secretary in writing* prior to creating an

alleged liability under the authority of 26 U.S.C. § 6020(b), establishing that an alleged Substitute For Return was issued and signed.

116. Defendant's employees failed to issue a signed Substitute For Return making false entries into Plaintiff's assigned Individual Master File (IMF) Complete for tax years According to regulations, in order for the Substitute for Return to be valid, the SFR must be signed and certified by the issuing officer pursuant to 26 CFR § 301.6020(a)(1) establishing a liability for each year – yet no evidence exists that a signature was obtained and the Secretary authorized the SFR established on the IMF Complete and Literal transcripts for tax years 2000, 200 and 2002, reflect an established Substitute for Return (SFR) TC – 150, indicating an employee of the IRS is presumed to have issued and signed the SFR's entry on the IMF account.

117. As disclosed in the IMF Complete and Literal transcripts for the tax periods December 31, 1999 and 2001, the TC - 150 reference established a *Zero liability* for issuance of the Substitute for Return (SFR) as applicable to 26 CFR 301.6020-1(2)(b)(2) and IRM 5.1.11.9 – 26 U.S.C. § 6020(b) Authority. The following are the only forms listed that the Secretary or his delegate are authorized to file as a Substitute for Return:

   a.) Form 940, Employer's Annual Federal Unemployment Tax Return

   b.) Form 941, Employer's Quarterly Federal Tax Returns

   c.) Form 942, Employer's Quarterly Tax Returns for Household Employees

   d.) Form 943, Employer's Annual Tax Return for Agricultural Employees

   e.) Form 720, Quarterly Federal Excise Tax Return

   f.) Form 2290, Heavy Vehicle Use Tax Return

   g.) Form CT-1, Employer's Annual Railroad Retirement Tax Return

   h.) Form 1065, U.S. Partnership Return of Income

118. Plaintiff is with knowledge that the Courts established that the Internal Revenue Manuals referencing IRS procedure have no force and effect of law - IRM 5.1.11.9 – 26 U.S.C. § 6020(b) Authority clearly establishes what forms are authorized to be issued for excise taxable activity as stated in a through h. above; and Form 1040 is not a form recognized for such purpose.

119. Defendant's employees failed to issue a signed Substitute For Return; but the false entries in both the Plaintiff's assigned Individual Master File (IMF) Complete and Literal Files for tax years 1999 and 2001 establish a Substitute for Return (SFR) or TC-150, indicating that an employee of the IRS is presumed to have issued and signed the SFR's.

120. The TC-150 entries in the IMF Complete and Literal that establish a liability module and create the Dummy Return are fraudulent entries on the transcript, as such an entry was not approved, signed or authorized by the Secretary or his delegate.

121. The individual and collective failure of Defendant's employees to comply with this Act of Congress has caused and continues to cause irreparable harm and injury to Plaintiff's personal property resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

## XXI.
## COUNT XV.
### Defendants Proceeded In Violation Of 26 U.S.C. § 7214(a)(2)

122. Plaintiff realleges all allegations stated above, and further alleges:

123. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of

$14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

124. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized, and with willful disregard for the internal revenue laws *knowingly demanded other or greater sums than are authorized by law,* a direct violation of 26 U.S.C. § 6702(a)(2)(B) and implementing regulations.

125. Plaintiff has been and continues to be severely damaged and injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property resulting in actual, direct economic damages sustained by Plaintiff which is the proximate cause and result of their reckless, intentional and willful actions.

## XXII.
## COUNT XVI.
### Defendants Proceeded In Violation Of 26 U.S.C. § 7214(a)(7)

126. Plaintiff realleges all allegations stated above, and further alleges:

127. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka,* CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a

procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

128. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized.

129. Individually and collectively, the Defendants had first hand knowledge of the numerous procedural requirements, as listed in this foregoing complaint herein and throughout, that were not satisfied prior to issuing a Notice of Federal Tax Lien and a Notice of Levy, and came into direct violation of 26 U.S.C. § 7214(a)(7) for their intentional and reckless acts.

130. Plaintiff has been and continues to be severely damaged and injured by the collusive actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property and resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

### XXIII.
### COUNT XVII.
### Counter-Defendant Proceeded In Violation Of 26 U.S.C. § 7431(a)(2)

131. Plaintiff reallege all allegations stated above, and further alleges:

132. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006 GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002; with willful disregard for the internal revenue laws proceeded in violation of 26 U.S.C. § 7431, *knowingly and intentionally disclosed return information in violation of provision of section 6103,* causing public injury to the Counterclaimants' name and reputation.

133. The Defendants have caused to be publicly disclosed the Plaintiff's assigned Treasury Account Number, referred to as the "Identifying Number" without any redactions - openly displayed in Jacksonville, Florida under what appears to be file number 2200555 RCD: 03/07/2005 BK: 2599 PG: 1300 and Serial Number 216195105 and serial number 307508806, easily accessible by parties not authorized to access such confidential information in direct violation of section 6103, which prohibits such disclosure of return information.

134. Plaintiff is with other evidence sufficient to establish that the Defendants intentionally discloses return information to persons and entities not authorized to have such information as indicated Plaintiff's Examination Administration Files and the Intergrated Collection Systems.

135. Because of the individual and collective failure of Defendants' employees to comply with 26 U.S.C. § 7214(a)(2), the Plaintiff has been and continue to be severely damaged and

injured by the collusive actions of the Defendants' employees, acting as financial terrorists, causing irreparable harm and injury to Plaintiff real and personal property resulting in actual, direct economic damages sustained by the Plaintiff which is the proximate cause and result of these reckless, intentional and willful actions.

### XXIII.
### COUNT XVIII.
### Harry Pollinger's Labor Is A Property
### Right Entitled To Just Compensation

136. Plaintiff realleges all allegations stated above, and further states:

137. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006, GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002, effectively slandering title to the name and real property rights of Plaintiff Harry Pollinger.

138. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized.

139. The Defendants collusively and with intent to deprive the Plaintiff of his Constitutionally-protected Rights, did in bad faith and willful oppression under color of law in violation of 26 U.S.C. § 7214(a)(1) intentionally and recklessly, with willful disregard for the internal revenue laws, caused Plaintiff's Compensation for Labor Property derived from his sweat equity in the amount of $16,142.46 to be illegally encumbered in violation of 26 U.S.C. § 7214(a)(7), knowingly demanding sums greater than authorized by law and causing injury to his person and property, with the use of a fraudulent security instrument identified as a non-judicial statutory Notice of Federal Tax Lien.

140. Plaintiff Harry Pollinger is indigenous to these 50 United States of (North) America, presently domiciled in a geographical location identified as the State of Oregon and continues to be a productive member of society. Plaintiff is with material facts sufficient to conclude that his personal labor is a property right, a source of energy, when applied by Harry Pollinger individually or collectively, has the ability to create wealth and prosperity and, therefore, subject to the protections under the Fifth, Thirteenth, Fourteenth and Sixteenth Amendments to the Constitution for the United States of America.

141. Plaintiff's free exercise of his ability to labor and provide for himself and his family comes with the price of deprivation of life, liberty, and property. The price of deprivation includes but is not limited to: (1) a loss of life with aging, physical wear and tear of ones body from mental and physical labor – never to recover the time or energy used from such labor, (2) loss of liberty – having to be in a certain place at a certain time out of necessity as a means to provide for family and survival, and (3) the personal or private property equally exchanged as result of the Plaintiff's labor to be enjoyed as just compensation therein protected under the Constitution.

142. The *Just Compensation Clause* of the Fifth Amendment states in pertinent part: "*. . . nor shall any person be deprived of life, liberty, or property . . . be taken for public use without just compensation.*" Accordingly, any statute purporting to levy Labor Property and **taken for public use** is subject to the *Just Compensation Clause* of the Fifth Amendment. "*Congress and the President, like the courts, possess no power not derived from the Constitution.*" <u>Ex Parte Quirin</u>, 63 S.Ct. 2, 10, 317 U.S. 1 (1942); and "[T]he Constitution [is] the supreme law established by the <u>people</u>. "<u>*Muskrat v. United States*</u>, 31 S.Ct. 250, 254 (1911).

143. Plaintiff's personal and private property derived from labor, are Rights to just compensation having suffered a loss and deprivation of both life and liberty in exchange for such property. This Right of just compensation and restoring the value of any property to the Plaintiff is protected under the Fifth Amendment to the Constitution.

144. The United States Supreme Court established without question that:

> "<u>*The property that every man has is his personal labor*</u>, *as it is the original foundation of all other property, so it is the most sacred and inviolable...to hinder his employing [it]...in what manner he thinks proper, without injury to his neighbor, is a plain violation of the most sacred property*". <u>Butcher's Union Co. v. Cresent City Co.</u>, 111 US 746.

> "*Property is everything which has an exchangeable value, and the right of property includes the power to dispose of it according to the will of the owner.* <u>*Labor is property,*</u> *and as such merits protection. The right to make it available is next in importance to the rights of life and liberty.* " <u>Slaughter-House Cases</u>, 83 U.S. 36 (1872)

> "Justice Stevens explained that he believes *that money is property . . . and as such, it is entitled to the constitutional protections normally afforded to property . . .*" (Stevens, J., concurring. <u>Landell v. Sorrell</u>, (Vt. 2000))

> "This leaves only the district's interest in control over how its money was spent and the state's interest in control over the allocation of resources for processing as property interests that could possibly rise to the status of "property". *Certainly the state and school district have cognizable property interests in their financial resources; money is property in the most traditional sense.*" <u>United States v. Granberry</u>, (E.D.Mo. 1989) *725 F. Supp. 446, 453*

145. The Defendants, employing an exaction on the Plaintiff's Labor Property in violation of the Fifth Amendment and denying equal protection of the law pursuant to the Fourteenth Amendment, effectively ignored 26 U.S.C. §§ 83, 212, 1001, 1012, *et. al.* when allegedly computing the presumed assessment against the Plaintiff (from an unknown basis of liability) – refusing to restore the fair market value of Plaintiff's labor as the Constitution and the statute commands.

146. The Defendants have, and are collectively and collusively attempting to usurp the Plaintiff's free exercise of said Rights in direct violation of the Common Law protections of the Constitution . . . intentionally seeking to deprive Plaintiff of his Labor Property by issuing the Notice of Federal Tax Lien in the amount of $54,953.66 for tax years 1999 and 2001, resulting in the unjust enrichment of Defendants who intentionally ignored the fair market value of Plaintiff's Labor and refused to restore the same.

147. Plaintiff has never intentionally contracted with the Defendants to waive his unalienable Rights, and has at all times retained such unalienable Rights, Privileges and Immunities not to be infringed by any [p]erson or creation of any Federal or state entity or collective entity that would result in Plaintiff being subjected to a form of statutory slavery, involuntary servitude or peonage.

148. Plaintiff has been and continues to be severely damaged and injured by the collusive actions of all Defendant's employees individually and collectively acting as financial terrorists, causing irreparable harm and injury to Plaintiff's personal property and resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

## XXIV.
## COUNT XIX.
### Quiet Title Action   28 U.S.C. § 2410

149. Plaintiff realleges all allegations stated above, and further states:

150. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C

SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-

protected Rights, did in bad faith and under color of law intentionally and recklessly cause a

procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of

$14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006, GREGORY

COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his

Constitutionally-protected Rights, did in bad faith and under color of law intentionally and

recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in

the amount of $35,857.07 for 2000, 2001 and 2002, rendering the instrument invalid;

151. This action arises under the Federal Tax Lien Act of 1966 [80 Stat. 1125] and Title 28

U.S.C. § 2410 and jurisdiction is conferred upon this honorable court to determine quiet title in

state law and federal Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367.

152. The Plaintiff, is the fee simple owner of real property located at 276 Baywinds Drive,

Destin, Florida [32541} more particularly described as follows:

> Lot 21, Phase 3, of Baywinds Golf Estates, according to the plat recorded in Plat Book 14,
> Page 10, of the Public Records of Oklaloosa County, Florida, together with all of its
> appurtenances according to the Declaration of Protective Covenants for Baywinds Golf
> Estates, a Residential Subdivision, recorded in Official Records Book 1659, Page 1291, of
> the Public Records of Okaloosa County, Florida, Supplementary Declaration of Protective
> Covenants for Baywinds Golf Estates, a Residential Subdivision as recorded in Official
> Records Book 1763 at Page 1237 and Supplemental Declaration of Protective Covenants
> for Baywinds Gold Estates, a Residential Subdivision as Recorded in Official Records
> Book 1763 at Page 1241, all of the Public Records of Okaloosa County, Florida (The
> "Protective Covenants") and the Easement Agreement recorded in OR Book 1659 at Page
> 1240, of the Public Records of Oklaloosa County, Florida, ("Easement Agreement")
> subject to all of the provisions of the Protective Covenants and the Easement Agreement.

153. The real property described above is in actual possession of the Plaintiff.

154. The Defendant, the United States is a federal corporation.

155. The Defendants, GREGORY COLLIER, C SHERWOOD and R.A. MITCHELL, named on the Notice of Federal Tax lien are presumed to be employees of the United States.

156. The Plaintiff contends that the Defendants have no valid Notice of Federal Tax Lien or Federal Tax Lien and no authority to lien, or otherwise encumber the title to the above referenced real property by the creation and filing of the Notice of Federal Tax Lien.

157. The Plaintiff contends that the Defendants failed to comply with the procedural requirements of 26 U.S.C. § 6212 and 6213, and never caused a Notice of Deficiency to issue for tax years 2000, 2001 and 2002, giving Plaintiff an opportunity to petition tax court prior to issuing the Notice of Federal Tax Lien.

158. The Plaintiff contends and provides evidence sufficient to conclude that the Defendants failed to comply with the procedural requirements of 26 U.S.C. § 6203, and never made an assessment of a tax liability for tax years 2000, 2001 and 2002 prior to causing the Notice of Federal Tax Lien to issue.

159. The Plaintiff contends and provides evidence sufficient to conclude that the Defendants failed to comply with the procedural requirements of the internal revenue laws, *failing to obtain approval from the Secretary in writing* for tax years 1999 and 2001 pursuant to 26 U.S.C. § 6751(b) prior to or after issuing the Notice of Federal Tax Lien.

160. The Plaintiff contends that the Defendants intentionally violated the procedural requirements for the Substitute for Return (SFR) as applicable to 26 CFR § 301.6020-1(2)(b)(2) and IRM 5.1.11.9 – 26 U.S.C. § 6020(b) Authority, and failed to obtain a Signature from the Secretary authorizing the issuance of the Substitute for Return for tax periods 1999 and 2001 as

indicated on the Notice of Federal Tax Lien. The Defendants, causing and SFR Form 1040 to

issue, knew that the Authority of Section 6020(b) does not authorize the issuance of Form 1040.

161. The procedural violations enumerated herein are consistent with the violations as stated

throughout these causes of action.

162. The Defendants claim some interest adverse to the Plaintiff's in the real property

described above, but the Defendants' claim is without merit and the Defendants have no estate,

title, claim, lien, or superior claim in the real property or any portion thereof.

163. The Plaintiff has no plain, speedy or adequate remedy at law.

164. Plaintiff has been and continues to be severely damaged and injured by the collusive

actions of all Defendant's employees acting as financial terrorists, causing irreparable harm and

injury to Plaintiff's personal property and resulting in actual, direct economic damages

sustained by Plaintiff, which is the proximate cause and result of their reckless, intentional and

willful actions.

**XXXV**
**COUNT XX**
**Defendant has Attempted to Convert the Plaintiff's Rights of Labor Property
into a Privileged and Forced Participation in a Government Kickback Scheme**

165. Plaintiff realleges all allegations stated above, and further states:

166. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C

SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-

protected Rights, did in bad faith and under color of law intentionally and recklessly cause a

procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of

$14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006, GREGORY

COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his

Constitutionally-protected Rights, did in bad faith and under color of law intentionally and

recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002.

167. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized and *did knowingly make and sign fraudulent entries in books, made and signed fraudulent certificates, returns, and statements* titled a "Notice of Federal Tax Lien" against Plaintiff's personal-property .

168. The Defendants acted in violation of the Anti Trust laws at 15 U.S.C. § 17 wherein the United States Congress passed into law that "*the labor of a human being is not a commodity or article of commerce. . .*" in keeping with the *Just Compensation Clause* of the Fifth Amendment and the *Anti-Slavery Clause* of the Thirteenth Amendment.

169. The Defendants did fraudulently misapply the enforcement authority of Title 26 United States Code at Subtitle "F" levy action, and regulations at 26 CFR 301.6334-1 - property exempt from levy CFR § 301.6334-2(a).

170. The Defendants well knew they were bound by regulation pursuant to 5 U.S.C. § 301 upon a Treasury Decision made, and does not have general applicability under 44 U.S.C. § 1501 *et seq.* Pursuant to 44 U.S.C. § 1505 - Documents to be published in Federal Register (a) documents (regulations) to be published ... in Federal Register in respect to sections of law.

171. Pursuant to 26 CFR § 404.6334(d)-l(a) filed by authority of Section 26 U.S.C. § 6334(d), as per public law the applicability would be in respect to the general public in or to be in ATF & E (Alcohol, Tobacco, Firearms and Explosives) activities Subtitle "F".

172. The Defendants knew that pursuant to 28 U.S.C. § 2463, "property taken under revenue laws is not repleviable, rendering income - exempt from levy - therefore if taken is repleviable. Accordingly, what is not repleviable (i.e., that which is subject to being taken) is the United States Government's property (aka "Federal income tax") that is transferred to the United States person (26 U.S.C. § 7701(a)(30)) from which a "gain" portion is derived by such employee within the United States Government pursuant to the Rev. Act of 1918 and the balance is returnable on a Form 1040 in respect to their contract - one of *bailment*.

173. Defendants knew that Regulation 26 CFR § 1.6012-1. Individuals required to make returns of income, (a) **Individual citizen or resident** – (6) Form of return. Form 1040 is prescribed for general use in making the return required under this paragraph. . . . 28 U.S.C. § 2463 is referred to in 26 U.S.C. § 7437.

174. The Defendants well knew that the Internal Revenue Service that any [p]erson who files a Form 1040 on "*income*" the United States Government is on record of accepting it as a gift (see 31 U.S.C. § 321(d). Upon evidence of willful failure to file such gift - if the United States Government has a cause of action one of injury - it has remedy to seek damages in a common-law – Seventh Amendment – court by its own rules. (See Fed. Rules of Civ. Proc., Rule 38(a), Jury trial of right) and the Defendants may file a verified complaint of injury – seeking damages – upon proof of injury provides jurisdiction to a common law court.

175. Congress making no errors in their Act, defines a United States person as distinguished from a *natural person* in the following manner at 26 U.S.C. § 7701(a)(30) United States person. (A) **a citizen or resident of the United States** is in the same class and kind (*ejusdem generis*) as "employee" defined in 26 U.S.C. § 3401(c) - who is "an individual" employed by the U.S. Government ("employer" in 26 U.S.C. § 3401(d) and further confirmed at 26 U.S.C. § 6331 (a))

- a [p]erson not of the same situs or protection under the Common Law of the Constitution as a *natural person* defined in various sections of Title 26 of United States Code.

176. Property that is subject to "levy" under 26 U.S.C. § 6331(a) does not include "income" – income being exempt from levy under 26 U.S.C. § 6334 on notice in regulation for U.S. Government employees in 26 CFR § 301.6334-2, and 26 CFR § 404.6334(d)-(l)(a) for person subject to ATF and E activities.

177. The Plaintiff, having knowledge of the facts stated herein, believes that he has never derived federal income as herein defined by statute and implementing regulations, and believes he could be charged with filing a false return – taking part in the Defendants' kickback scheme in violation of 26 U.S.C. § 7206.

178. An insurmountable amount of documentation has resulted from the Plaintiff communicating with the Defendants over a span of years, effectively diffusing the rebuttable presumption that such a liability ever existed, but the Defendants would not relent, having the financial backing from the awesome machinery of the Government with [T]axpayers (human resources) that has resulted in the Petitioner's destruction.

179. The Plaintiff has been and continues to be severely damaged and injured by the collusive actions of the Defendants' employees, acting as financial terrorists, causing irreparable harm and injury to the Plaintiff's real and personal Labor Property and resulting in actual, direct economic damages sustained by the Plaintiff, which is the proximate cause and result of these reckless, intentional and willful actions.

## XXVI
## COUNT XXI
### Defendants Are Habitual Offenders of The Constitution And United States Supreme Court Precedent and Proceeded In Violation Of 26 USC 7214(a)(2)

180. Plaintiff realleges all allegations stated above, and further states:

181. On or about February 28, 2005, alleged Revenue Officer GREGORY COLLIER and C SHERWOOD *aka*, CHERYL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $14,125.65 for tax years 2000, and 2000; and on or about August 3, 2006, GREGORY COLLIER & R. A. MITCHELL conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Federal Tax Lien" to issue against Plaintiff in the amount of $35,857.07 for 2000, 2001 and 2002

182. On or about April 26, 2006 or soon thereafter, Defendant's employee agent GREGORY COLLIER, conspired with intent to deprive Plaintiff of his Constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly cause a procedurally invalid "Notice of Levy" to issue against Plaintiff in the amount of $15,084.67 for tax years 2000 and 2001, causing an amount of a $16,142.46 to be seized; and did *knowingly make and sign fraudulent entries in books, made and signed fraudulent certificates, returns, and statements* titled "Notice of Federal Tax Lien" and "Notice of Levy" against Plaintiff's personal-property rights.

183. The Defendants admit that although they are bound by United States Supreme Court precedent in their publication found in IRS Publication 556 which states in pertinent part: *"The IRS must follow the tax laws as set forth by Congress and the Internal Revenue Code.* . . . __*The IRS also follows court decisions*__. *"However, the IRS can lose cases that involve taxpayers with the same issue and still apply its interpretation of the law to your situation"* —

that they will interpret the law to their discretion – even if their interpretation comes in contempt of the Constitution or the Supreme Court.

184. The Defendants began this steam roll of imperialistic collusion dating back to the year 1884 when Congress passed the Comprehensive Income Tax Act found in the Statutes at large at [28 Stat. At 509, 533 Chap. 349], in violation of the Constitution for the United States of America at Article I, Section 8, Clause 1, as the beginning of a terrorist journey that has destroyed millions of lives to date, including the Plaintiff's.

185. In 1895 the United States Supreme Court struck down this Act of in a case titled ***Pollock v. Farmers' Loan & Trust Co.***, 157 U.S. 429, concluding that direct taxation within the Constitution was unconstitutional.

186. The Defendants, on or about February 25, 1913, in an attempt to remedy direct taxation determined to be unconstitutional, contrived another ponzi scheme by amending the United States Constitution (without the consent of the people) at Article XVI, which reads, ***"The Congress shall have the power to lay and collect taxes on income, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."***

187. Having ratified the ***Sixteenth Amendment*** and erroneously thinking it now possessed the lawful authority to directly tax everything without apportionment, Congress, on October 3, 1913, passed the *Underwood Tariff Act* found in the Statutes at Large at [38 Stat. 114, 166] which contained an income tax act just like the ***Comprehensive Income Tax Act of 1894*** previously deemed unconstitutional.

/ / /

/ / /

188. The Defendants knew that the *Underwood Tariff Act* found in the Statutes At Large at [38 Stat. 114, 16], amended many times since its adoption in 1913, is the genesis of the modern day *Income Tax Code* also known as the *Tax Reform Act of 1986.*

189. The Defendants knew that three years after the passage of the *Underwood Tariff Act,* on February 21, 1916, the Supreme Court ruled on the effect the *Sixteenth Amendment* had on the Constitution of the United States and the taxing authority of Congress when it ruled in the case of *Stanton v. Baltic Mining Co.,* 240 U.S. 103, 112-113 (1916), "...the provisions of the 16th Amendment conferred no new power of taxation, but simply prohibited the previous complete and plenary power of income taxation possessed by Congress from the beginning from being taken out of the category of indirect taxation to which it inherently belonged, and being placed in the category of direct taxation subject to apportionment..."

190. The Defendants knew that the adoption of the **Sixteenth Amendment** DID NOT change the constitution and DID NOT confer any new taxing authority on the federal government. The decision of the United States Supreme Court in **Pollock**, supra is still in effect and controlling law to this very day and the **Underwood Tariff Act** found in the Statutes at Large at [38 Stat. 114, 166], brought forward as the Tax Reform Act of 1986, is void just as the **Comprehensive Income Tax Act of 1894** [found at 28 Stat. At 509, 553 chap. 349] which was the subject matter in Pollock, supra was held void by the Supreme Court of the United States.

191. The Defendants knew that the **Sixteenth Amendment** DID NOT repeal Article I, Section 2, Clause 3 and Article I, Section 9, Clause 4: both of which deal with the constitutional requirement of apportionment of direct taxes and the constitutional requirement of apportionment of direct taxes; and the Constitution CANNOT be valid if any two parts of it are in conflict.

192. The Defendants knew that the current Tax Code and the actions of the Federal Reserve, Department of the Treasury, and the Internal Revenue Service are attempts to directly tax all flesh and blood sentient beings without apportionment as required by the two referenced sections of the constitution and the decision in **Pollock**, supra.

193. The Defendants knew that the only portions of the current Tax Code that are lawful are those portions that tax activities that constitute a government granted franchise or privilege such as voluntarily operating through a corporation or voluntarily operating through a government granted license. These portions are *excise taxes* imposed lawfully for the exercise of such government granted franchises and privileges and require a return and the payment of a tax. All other activities outside the realm of government granted franchises and privileges are exercised by right and CANNOT be lawfully taxed without apportionment.

194. The Defendants knew that these affirmed findings of fact and conclusions of law are confirmed in *Stanton,* supra; and on January 24, 1916, United States Supreme Court ruled upon the purpose of the **Sixteenth Amendment** in the case of *Brushaber v. Union Pacific Railroad Co.,* 240 U.S. 1, 19, (1916), that: *"The Amendment contains nothing repudiation or challenging the ruling in the Pollock case* that the word direct had a broader significance since it embraced also taxes levied directly on personal labor property because of its ownership..."

195. The Defendants knew that on March 8, 1920, the U.S. Supreme Court held in the case of Eisner v. Macomber, 252 U.S. 189, 205 (1920), that: The Sixteenth Amendment must be construed in connection with the taxing clauses of the original Constitution and the effect attributed to them before the amendment was adopted . . ." yet has continued to proceed against the Plaintiff in contempt of the Supreme Court.

*196.* The Defendants knew that later in 1916, this finding of fact and conclusion of law was affirmed in *Brushaber v. Union Pacific Railroad Co.*, 240 U.S. 1, 16-17, (1916), when the Court held: "...the conclusion reached in the Pollock Case <u>did not</u> in any degree involve holding that <u>income taxes</u> generically and necessarily came within the class of direct taxes on property, but, on the contrary, recognized the fact that <u>taxation on income was in its nature an excise</u> entitled to be enforced as such unless and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was adopted to prevent, in which case the duty would arise to disregard form and consider substance alone, and hence subject the tax to the regulation as to apportionment which otherwise as an excise would not apply to it."

197. The United States Supreme Court clearly defined the term "excise" in *Flynt v. Stone Tracey*, 220 U.S. 107, 151 (1911), when it repeatedly held: "It is unnecessary to enter upon an extended consideration of the technical meaning of the term '<u>excise</u>'" It has been the subject-matter of considerable discussion, – the terms, duties, imposts, and <u>excises are generally treated as embracing the indirect forms of taxation contemplated by the Constitution</u>." "<u>Excises</u> are 'taxes laid upon the manufacture, sale, or consumption of commodities within the country, <u>upon licenses to pursue certain occupations, and upon corporate privileges</u>.'"

198. The Defendants knew that The Court further held in Flynt, supra, at page 152: "The tax under consideration, as we have construed the statute, may be described as <u>an excise upon the particular privilege of doing business in a corporate capacity</u>, i.e., with the advantages which arise from corporate organization; or, when applied to insurance companies, for doing the business of such companies. As was said in the Thomas Case, 192 U.S. supra, the requirement to pay such taxes involves the exercise of privileges, and the element of absolute and

unavoidable demand is lacking. <u>If business is not done in the manner described in the statute, no tax is payable . . .</u>" yet has continued to pervert the Plaintiff's Labor Property to that of a privilege.

199. The Defendants knew that the legal definition of "income" is exclusively attributed to gains and profits from business activities engaged in by and through corporate capacities. The United States Supreme Court held in the case of <u>*Flynt v. Stone Tracey,*</u> 220 U.S. 107, 150 (1911), that: *"The Pollock Case construed that tax there levied as direct, because it was imposed upon property simply because of its ownership." "The difference between the acts [The Act of 1894 and Corporation Excise Tax of 1909] is not merely nominal, but rests upon substantial differences between the mere ownership of personal labor property and the actual doing of business in a certain way*."

200. The Defendants knew that the United States Supreme Court ruled on this very issue in <u>*Flynt v. Stone Tracey*</u>, 220 U.S. 107, 150 (1911), when it held: "...in the Pollock Case, it was said that if a tax was direct within the constitutional sense, <u>the mere erroneous qualification of it as an excise or duty would not take it out of the constitutional requirement as to apportionment</u>."

201. The Defendants knew that The Department of the Treasury and the Internal Revenue Service CANNOT lawfully and summarily characterize taxes that are direct, and which legally require apportionment under the constitution, and attempt to apply these direct taxes are "excise taxes" and extort money from state citizens/subject/slaves.

202. The Defendants knew that the United States Supreme Court defined the true function of the adoption of the **Sixteenth Amendment** in the case of <u>***Stanton v. Baltic Mining Co***</u>., 240 U.S. 103, 112-113 (1916), when it held that: *"...the provisions of the 16th Amendment \*\*\**

*simply prohibited the previous complete and plenary power of income taxation possessed by Congress from the beginning from being taken out of the category of indirect taxation to which it inherently belonged, and being placed in the category of direct taxation subject to apportionment...*"

203. The Defendants knew that the legal affect of the adoption of the **Sixteenth Amendment** is to prevent Congress from taxing authority out of the realm of government granted privileges, which is exactly what Congress did in the **Underwood Tariff Act**. Therefore the ***Tax Reform Act of 1986*** violates the **Sixteenth Amendment** and is void as it relates to flesh and blood sentient beings NOT engaged in government franchises.

204. Plaintiff has been and continues to be severely damaged and injured by the collusive actions of all Defendant's employees acting in concert as financial terrorists, causing irreparable harm and injury to Plaintiff's personal Labor Property resulting in actual, direct economic damages sustained by Plaintiff, which is the proximate cause and result of their reckless, intentional and willful actions.

## XXVIII.

### Conclusion And Demand For Remedy And Relief Sought

1.1 Plaintiff, having documented evidence of the reckless willful acts and intentional disregard of the internal revenue laws by officers, employees and agents of the UNITED STATES Defendants, is therefore entitled to damages.

1.2 The acts, conduct and behavior of the Defendants taken separately and as a whole were performed knowingly, intentionally and maliciously, by reason for which Plaintiff is entitled to judgment. By the unlawful acts of the Defendants, the Plaintiff has suffered irreparable harm and damage to his reputation and livelihood, loss of freedom and liberty,

emotional distress, extreme oppression, fear, anxiety, and a multitude of health and financially related deprivations giving rise to Plaintiff filing this verified complaint seeking damages as the only just and proper remedy.

**WHEREFORE**, Plaintiff Harry Pollinger has been damaged by the actions and inactions of officers, employees and agents of the United States Defendants due to their individual and collective intentionally and recklessly willful disregard for the internal revenue laws, causing the procedurally invalid administrative Notice of Federal Tax Lien and prays for and is entitled to relief as follows:

a. An Order commanding the Defendants to cease and desist in their illegal actions as stated herein above causing irreparable harm and damage to the name, reputation, personal and real property rights of the Plaintiff;

b. An Order commanding the Defendants release the procedurally invalid Notice of Federal Tax Lien and cause a Certificate of Release of Federal Tax Lien to issue on all real property belonging to Plaintiff;

c. An Order of judgment against the Defendants for statutory damages in the amount of One Million Dollars ($1,000,000) for each cause of action enumerated herein totaling Twenty-one (21) Million Dollars;

d. An Order commanding the Defendants pay the cost of this action;

e. Any other remedy at law and in equity this Court deems just and proper.

Respectfully Submitted.

## VERIFICATION

I, Harry Pollinger, declare under penalty of perjury and the Laws of God and the United States of (North) America as a Conscious, Thinking, Feeling, Living, Breathing, Flesh and Blood

Sentient Being that the foregoing is true, correct and not meant to mislead. All Rights retained

without recourse.

On this **31** day October, 2006

_Harry Pollinger_
Harry Pollinger, Plaintiff
c/o  PO Box 6577
Destin, Florida [32550]

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Harry Pollinger | UNITED STATES OF AMERICA, GREGORY COLLIER, C. SHERWOOD, and R.A. MITCHELL |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Okaloosa County
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Harry Pollinger, in Pro Se       (850) 376-6088
PO Box 6577
Destin, Florida 32550

CASE NUMBER   1:06CV01885

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Pro se General Civil

DATE STAMP: 11/__/2006

*JURY ACTION*

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF ... FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)     OR     ◉ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☒ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

⑤

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Article I § 7, Amendments I, V, VI, IX, XIV XVI of U.S. Constitution; 15 U.S.C. § 17; Using Plaintiff's Labor Property as an article of commerce

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** $21,000,500,000 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒   NO ☐ |

**VIII. RELATED CASE(S) IF ANY** *N.F.*   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 10/31/06   SIGNATURE OF ATTORNEY OF RECORD   *Harry Pollinger*

11.2.06

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.